

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 28, 1960

Hon. E. J. Elam
County Attorney
Somervell County
Glen Rose, Texas

Opinion No. WW-818

Re: Whether the aircraft of a
commercial airline are
taxable on an ad valorem
basis when such aircraft
are based in the county
of the company's domicile
even though the aircraft
fly in interstate commerce.

Dear Mr. Elam:

You have requested an opinion on two questions:

"1. Are the aircraft of a commercial airline
$\angle$ taxable $\angle$ on an ad valorem basis when such air-
craft are based in the county where the company
is domiciled, even though the aircraft fly in in-
terstate commerce?

"2. If these aircraft are taxable would the
apportionment rule as laid down by the Federal
Courts in the Flying Tigers and other cases be
legally applicable in Texas, or should the assess-
ment be made on all the aircraft on the basis of
total value?"

Article VIII, Section 11, of the Texas Constitution
provides:

"All property, whether owned by persons or
corporations, shall be assessed for taxation, <u>and
the taxes paid in the county where situated, but</u>
the Legislature may, by a two-thirds vote, author-
ize the payment of taxes of non-residents of coun-
ties to be made at the office of the Comptroller
of Public Accounts."

Article 7153 of Vernon's Civil Statutes of Texas
states:

"All property, real and personal, except such
as is required to be listed and assessed otherwise,
<u>shall be listed and assessed in the county where</u>

it is situated; and all personal property, subject
to taxation and temporarily removed from the State
or county, shall be listed and assessed in the
county of the residence of the owner thereof, or
in the county where the principal office. of such
owner is situated."

The foregoing provisions have been construed to
mean that property shall be taxed at its proper tax situs.
Great Southern Life Insurance Company v. City of Austin, 243
S.W. 778 (Tex.Sup.Ct. 1922); Fielder, The Texas Tax Struc-
ture, V.C.S., Volume 20, page XIII. Under the common law,
personal property is taxable at the domicile of its owner
unless such property has acquired a fixed or permanent situs
elsewhere. See Great Southern Life Insurance Company v.
City of Austin, supra. Under the facts presented in ques-
tion No. 1, it is apparent that the aircraft, which are
based in the county where the company-owner is domiciled,
have a situs in that county (and only in that county) for
the purpose of Texas ad valorem taxation. See Chemical Ex-
press, et al. v. City of Roscoe, 310 S.W.2d 694 (Tex.Civ.
App. 1958, error ref.). It remains to determine whether the
county may, consistently with the Federal Constitution, im-
pose ad valorem taxes upon the full value of the aircraft.

The answer to question No. 2 is controlled by four
cases decided by the United States Supreme Court. The first
is Northwest Airlines, Incorporated v. Minnesota, 322 U.S.
292 (1944). This case held that the State of Minnesota, in
which the subject airline was domiciled, had constitutional
power to tax the airline's entire fleet of aircraft at the
full value thereof, even though all the planes were continu-
ously engaged in interstate flight. A vigorous dissenting
opinion was written by Chief Justice Stone, in which it was
contended that Minnesota could only impose an apportioned ad
valorem tax.

In 1949 the Supreme Court held in Ott v. Mississippi
Barge Line, 336 U.S. 169, that Louisiana, a non-domiciliary
state, could tax barges and tugs moving in and out of the
state, on an apportioned ad valorem basis according to the
commerce carried on within the state.

Standard Oil Company v. Peck, 342 U.S. 382 (1952),
which involved vessels traveling on the Mississippi River,
adopted the rule that a domiciliary state could not tax, on
an ad valorem basis, the full value of property located only
part of the time within its borders, and which must have

acquired a tax situs elsewhere, without constituting an unreasonable burden on interstate commerce. The court stated at page 310:

> "The rule which permits taxation by two or more states on an apportioned basis precludes taxation of all the property by the state of the domicile."

The court distinguished the Northwest Airlines case on the ground that in that case it had not been shown that "a defined part of the domiciliary corpus" had acquired a taxable situs elsewhere.

In 1954 the Supreme Court held in Braniff Airways, Inc. v. Nebraska Board of Equalization and Assessment, 347 U.S. 590, that the State of Nebraska could subject the aircraft of a non-domiciliary interstate airline to an apportioned ad valorem tax, even though the airline made only 18 regularly scheduled stops in the state. In holding that the regularly scheduled stops formed a sufficient nexus with the taxing jurisdiction to allow taxation of a properly apportioned fraction[1] of the airline's property, the court ratified and adhered to Standard Oil v. Peck, and distinguished the Northwest Airlines case in the following language:

> "While no one view /¯in the Northwest case_7 mustered a majority of this court, it seems fair to say that without the position stated in the Conclusion and Judgment which announced the decision of this court, the result would have been the reverse. That position was that it was not shown 'that a defined part of the domiciliary corpus has acquired a permanent location, i.e., a taxing situs, elsewhere.' 322 U.S. at page 295, 64 S.Ct. at page 952. That opinion recognized the 'doctrine of tax apportionment for instrumentalities engaged in interstate commerce,'

---

[1] The concurring opinion of Mr. Justice Douglas states, in effect, that this fraction is the amount of property that justifiably can be said to be within the taxing jurisdictions at all times during the taxing period. The validity of this proposition is somewhat dubious in view of the apportionment formulas that have received either direct or tacit approval. See the discussion above.

322 U.S. at page 297, 64 S.Ct. at page 953, but
held it inapplicable because no 'property (or a
portion of fungible units) is permanently situ-
ated in a state other than the domiciliary state.'"

In view of the foregoing, it appears that where a
non-domiciliary state has acquired the power to impose an
apportioned ad valorem tax, the domicile must also impose an
apportioned tax. See the analysis in Flying Tiger Line v.
County of Los Angeles, 333 P.2d 323 (Cal.Sup.Ct. 1958); and
see Slick Airways, Inc. v. County of Los Angeles, 295 P.2d
46 (Cal.Ct.App. 1956), and Flying Tiger Line v. County of Los
Angeles, 323 P.2d 1065 (Cal.Ct.App. 1958). Under the Braniff
case, it is clear that regularly scheduled arrivals and de-
partures in a state are sufficient to establish an ad valorem
tax situs in that state. However, though there has been no
concrete rule established on this point, it does not appear
that intermittent, irregular or sporadic flights into another
state will form a sufficient nexus with that state to allow
the imposition of even an apportioned ad valorem tax. See
Braniff case, 347 U.S. at pages 592-3. Therefore, we are un-
able to answer your second question since you have not set
forth sufficient facts upon which to base a conclusion. If,
in fact, the airline to which you refer has not acquired a
taxable situs in another state within the purview of the
Braniff case, then all aircraft based in your county are tax-
able at their full value. If, however, a taxable situs has
actually been acquired in another state, then the ad valorem
tax by your county must be apportioned.2 In this connection,

---

2 Texas has no uniform apportionment rule. Therefore, the
formula to be used is within the discretion of the county. All
that is required is that it comport with the traditional con-
cept of due process, i.e., that it have some relation to the
benefits and protection afforded by the taxing state. See
Flying Tiger Line v. County of Los Angeles, 333 P.2d 323 (Cal.
Sup.Ct. 1959); Braniff Airways v. Nebraska, supra. If the for-
mula meets this test, then, under the rationale of the Braniff
case, there will be no violation of the Commerce Clause of the
Federal Constitution.
In the Flying Tiger cases in California the apportionment
formula was based upon the equalization board's determination
of the amount of time spent by the aircraft in the county dur-
ing an arbitrary period during the taxable year. In the Braniff
case the apportionment was based upon a three-factor allocation
formula, the three factors being (1) arrivals and departures,
(2) revenue tons and (3) originating revenue. Justice Frankfur-
ter, in footnote 3 to his dissenting opinion in this case (347
U.S. at page 606), points out that three other apportionment
formulas have been proposed.

it makes no difference whether the aircraft are actually being taxed in another state, so long as a taxable situs in another state has been acquired.  Flying Tiger Line v. County of Los Angeles, 333 P.2d 323.

### SUMMARY

Aircraft of a commercial airline are taxable on an ad valorem basis when such aircraft are based in the county where the company is domiciled even though the aircraft fly in interstate commerce.  Whether or not such aircraft are taxable at their full value or on an apportioned basis depends upon whether such aircraft have obtained a taxable situs in another state within the purview of the case of Braniff Airways v. Nebraska State Board of Equalization and Assessment. 347 U.S. 590 (1954).

Very truly yours,

WILL WILSON
Attorney General

By Jack N. Price
Assistant

JNP:bct

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

James M. Farris
J. Arthur Sandlin
John C. Steinberger
Zellner J. Turlington

APPROVED FOR THE ATTORNEY GENERAL:
By: Leonard Passmore