[Civ. No. 8001.    Fourth Dist., Div. Two.    Nov. 14, 1966.]

ZANTOP AIR TRANSPORT, INC., Plaintiff and Appellant, v. COUNTY OF SAN BERNARDINO, Defendant and Respondent.

Finch, Bell, Duitsman & Margulis and Roger G. Duitsman for Plaintiff and Appellant.

Stanford D. Herlick, County Counsel, and Robert R. Walker, Deputy County Counsel, for Defendant and Respondent.

TAMURA, J. — Plaintiff, a nondomiciliary corporation engaged in interstate air transportation of cargo and passengers under government contracts, appeals from an adverse judgment in its action against the County of San Bernardino to recover ad valorem taxes levied on an apportioned value of plaintiff's flight equipment.

The case was submitted to the trial court on the following stipulated facts:

Plaintiff is a Michigan corporation with its principal office in Detroit. Its sole business is the fulfillment of two contracts with the United States Air Force for air transportation of cargo and, occasionally, upon approval of the air force, passengers between air bases in the United States both in and out of California, including Norton Air Force Base in San Bernardino County and bases in Santa Barbara, Solano and Sacramento Counties. In the performance of the contracts, plaintiff owned a fleet of 20 C-46s and 4 DC-6As which it operated on regularly-scheduled flights, either daily or on alternate days. A specific plane was not regularly assigned to the same scheduled run, the planes being substituted from time to time. No corporate officers were stationed in San Bernardino County. All matters relating to its contracts and the administration thereof were handled from the plaintiff's home office in Detroit. It did maintain in San Bernardino County a facility for the repair and maintenance of its equipment but the tax thereon was separately assessed and paid and is not involved in this action.

For the tax year 1962-63, defendant's assessor assessed the planes on the basis of their average physical presence during the year using the following method: He determined the average daily plane hours of physical presence in the county for each type of aircraft by taking the ground time at Norton Air Force Base and adding thereto, for direct flights to and from Norton and out-of-state bases, "flight time" within California or, for flights to and from bases within the state, one-half of the air time. For flights occurring on alternate

days, he divided the total by two. By multiplying the market value of the aircraft by the ratio which the total average plane hours thus derived bore to 24, he arrived at an apportioned value continuously present during the tax year for each type of aircraft making regularly-scheduled stopovers at Norton. There was no dispute concerning the market value which the assessor assigned to the aircraft.

It was stipulated that the counties of Santa Barbara, Solano, and Sacramento levied a similar tax on plaintiff's aircraft.

Plaintiff paid the tax under protest and brought this action. The complaint alleged nine causes of action, each stating a separate ground of attack on the assessment, but by stipulation of the parties all but three were dismissed:[1] It was stipulated that the remaining causes of action presented only two legal issues for determination: (1) Whether, under the Constitution and statutes of California, defendant was empowered to levy an ad valorem tax on migratory flight equipment, and (2) whether the inclusion of "flight time" in the apportionment formula was proper.

The trial court made findings in accordance with the stipulation, concluded that the assessment was valid, and entered judgment for defendant.

Plaintiff concedes that under the rule enunciated in *Braniff Airways, Inc.* v. *Nebraska State Board of Equalization,* 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757], California has jurisdiction to levy an ad valorem tax on plaintiff's aircraft on a properly apportioned basis, but contends that it has not exercised that power. To support that contention, plaintiff relies upon the language of section 10, article XIII of the California Constitution and section 404 of the Revenue and Taxation Code implementing it, providing for the assessment of property ". . . in the county in which it is situated." The argument is that the taxation of migratory flight equipment could not have been contemplated because by its nature such property is not "permanently situated" in a particular county. If plaintiff's contention is sound it would be in the enviable position of enjoying tax exemption on the value attributable to use in California both in this state and in the

---

[1] Among the grounds of asserted invalidity of the assessment abandoned by plaintiff in the trial court, were the allegations that the state did not reserve jurisdiction to tax property on Norton Air Force Base and that plaintiff's property was exempt as an instrumentality of the United States.

domiciliary State of Michigan. Michigan would be precluded from taxing values having a taxable situs in this state whether or not California elected to tax. (*Central R.R. Co.* v. *Pennsylvania*, 370 U.S. 607 [8 L.Ed.2d 720, 82 S.Ct. 1297].)

■ The word "situated", however, as used in section 10, article XIII of the Constitution and section 404 of the Revenue and Taxation Code is synonymous with "situs"; it means having such contacts as confer jurisdiction to tax. (*Brock & Co.* v. *Board of Supervisors*, 8 Cal.2d 286 [65 P.2d 791, 110 A.L.R. 700]; *Town of Cady* v. *Alexander Constr. Co.*, 12 Wis.2d 236 [107 N.W.2d 267, 108 N.W.2d 145]; *City of Dallas* v. *Texas Prudential Ins. Co.*, 156 Tex. 36 [291 S.W.2d 693].) Plaintiff admits that under *Braniff Airways, Inc.* v. *Nebraska State Board of Equalization, supra,* 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757], a properly apportioned value of its aircraft has a taxable situs in this state. ■ Past decisions have implicitly, if not expressly, determined that the situs of such property within the state is in the county in which it is present on a regular and ascertainable portion of its life. (*Flying Tiger Line, Inc.* v. *County of Los Angeles,* 51 Cal.2d 314 [333 P.2d 323]; *Slick Airways, Inc.* v. *County of Los Angeles,* 140 Cal.App.2d 311 [295 P.2d 46].) ■ The fact that section 14, article XIII of the Constitution providing for the centralized assessment of railroad, utility, and certain other types of property fails to include aircraft cannot be taken as an intention to exempt such property from taxation. It is a constitutional mandate (§ 1, art. XIII), implemented by legislation (Rev. & Tax. Code, §§ 201, 401, 404), that all property, not otherwise exempt, shall bear its fair and equal burden of taxation. (*Feather River Power Co.* v. *State Board of Equalization,* 206 Cal. 486 [274 P. 962].) There are no constitutional or statutory provisions exempting interstate migratory flight equipment.

The cases of *People* v. *Niles,* 35 Cal. 282; *Rosasco* v. *County of Tuolumne,* 143 Cal. 430 [77 P. 148]; *Church* v. *City of Los Angeles,* 96 Cal.App.2d 89 [214 P.2d 550], and *Brock & Co.* v. *Board of Supervisors, supra,* 8 Cal.2d 286, cited by plaintiff do not support its narrow definition of the word "situated." They merely hold that temporary presence of property on lien date does not confer jurisdiction to tax (*People* v. *Niles, supra; Rosasco* v. *County of Tuolumne, supra; Church* v. *City of Los Angeles, supra*), and, conversely, that temporary absence on tax day does not terminate taxable situs. (*Brock &*

*Co.* v. *Board of Supervisors, supra.*) They do not deal with the situs of migratory property habitually employed in a county.

██ We conclude that a portion of the value of plaintiff's flight equipment was "situated" in and subject to taxation by defendant-county.

Turning to the propriety of including "flight time" (air time in the state) in the apportionment formula, both parties agree that the question has never been squarely decided. But plaintiff contends that the decision in *Flying Tiger Lines, Inc.* v. *County of Los Angeles, supra,* 51 Cal.2d 314, by implication, prohibits such inclusion. We find no basis for so construing that case. The issue there was whether California (the airline's commercial domicile) through Los Angeles County (the home base of the aircraft), could tax the full value of the airline's planes flown in foreign and interstate commerce where they habitually spent a portion of their time outside the state. The court held that Los Angeles County could not tax the full value and affirmed a judgment of the trial court awarding the taxpayer the amount it sought to recover; namely, the difference between the tax paid and the amount which would have been levied on an apportioned value based upon average physical presence in the county. Justice (now Chief Justice) Traynor dissented on the ground that the commercial domicile may tax the full value where the property has not acquired a taxable situs elsewhere.[2] Plaintiff argues that Justice Traynor's observation, that the "physical presence test compelled by the majority" would result in inequities because values represented by "bridge time" would escape taxation, requires the majority opinion to be read as implying that "flight time" may not be considered in determining average physical presence.[3] It is apparent, however, that the "bridge time" which was of concern to Justice

[2] The view expressed by Justice Traynor that the domicile may assess the full value unless the taxpayer shows that taxable situs has been acquired elsewhere was the one adopted by the U.S. Supreme Court in *Central R.R. Co.* v. *Pennsylvania,* 370 U.S. 607 [8 L.Ed.2d 720, 82 S.Ct. 1297].

[3] The question whether a state over which aircraft is regularly flown but in which no scheduled stops are made has jurisdiction to tax has never been squarely decided. (*Federal Limitations on State Taxation of Interstate Business,* 75 Harv. L. Rev., 953, 992; Multiple Taxation of Air Commerce, H. R. Document No. 141, 79th Cong. 1st Sess. 53-54.) See concurring opinion of Justice Jackson in *Northwest Airlines* v. *Minnesota,* 322 U.S. 292, 304 [88 L.Ed. 1283, 64 S.Ct. 950, 956, 153 A.L.R. 245], for the view that the subjacent state does not have jurisdiction to tax.

Traynor was air time over the high seas or over states with which the aircraft did not have sufficient contacts to confer jurisdiction to tax. He was of the view that a multi-factored apportionment formula, such as arrivals and departures, revenue tons, and originating revenues as used by Nebraska in *Braniff Airways, Inc.* v. *Nebraska State Board of Equalization, supra,* 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757], would provide for a more equitable apportionment of value among the states. If physical presence was to be a factor, he suggested that "bridge time" be excluded from the calculations completely. This would allow each state to tax that proportion of the value which time spent within the state bears to total time spent within all jurisdictions in which a taxable situs had been established.

We cannot derive any implication from *Flying Tiger Lines, Inc.* v. *County of Los Angeles, supra,* which would preclude the inclusion of "flight time" in the apportionment formula.

Plaintiff argues that the opinions in *Slick Airways, Inc.* v. *County of Los Angeles,* 140 Cal.App.2d 311 [295 P.2d 46], and *Flying Tiger Lines, Inc.* v. *County of Los Angeles, supra,* 51 Cal.2d 314, indicate that the apportionment formula used by Los Angeles County taxed only the value represented by actual time spent in the county. The precise calculation used by Los Angeles County in determining the duration of physical presence in the county is not disclosed in the opinions nor was it an issue in either of the cases.[4]

The validity of a particular apportionment formula for the taxation of instrumentalities used in interstate commerce so far as the United States Constitution is concerned turns upon the commerce and due process clauses. "The problem under the Commerce Clause is to determine 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' (*Nashville C. & St. L. Ry. Co.* v. *Browning,* 310 U.S. 362, 365 [84 L.Ed. 1254, 1255, 60 S.Ct. 968, 970]; *Central R.R. Co.* v. *Pennsylvania, supra,* 370 U.S. 607, 623 [8 L.Ed.2d 720, 731, 82 S.Ct. 1297].) So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing

---

[4]The opinion in *Scandinavian Airline System, Inc* v. *County of Los Angeles,* 56 Cal.2d 11 at p. 17 [14 Cal.Rptr. 25, 363 P.2d 25] reveals that the method then used by Los Angeles County in determining average physical presence in the county consisted of determining ground time in Los Angeles and adding thereto one hour flying time per trip.

State. (See *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444 [85 L.Ed. 267, 270, 61 S.Ct. 246, 249, 130 A.L.R. 1229, 1232-1233].) Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the State." (*Ott* v. *Mississippi Valley Barge Line Co.*, 336 U.S. 169 [93 L.Ed. 585, 69 S.Ct. 432] ; *Braniff Airways, Inc.* v. *Nebraska State Board of Equalization, supra,* 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757].) ▮ A reasonable attempt must be made to tax only so much of the value as is fairly related to use within the taxing jurisdiction. (*Union Tank Line Co.* v. *Wright,* 249 U.S. 275, 282 [63 L.Ed. 602, 39 S.Ct. 276, 278].) Mathematical exactitude, however, is neither attainable nor constitutionally required. (*Nashville C. & St. Louis Ry. Co.* v. *Browning, supra*; see *People* v. *Keith Ry. Equipment Co.,* 70 Cal.App.2d 339, 348 [161 P.2d 244].)

In the instant case, so far as the commerce clause is concerned, plaintiff does not contend that the tax is discriminatory. In fact, it abandoned that ground of attack in the trial court. There is no contention that the inclusion of "flight time" in the apportionment formula will result in the imposition of cumulative taxes by other states. Nor does plaintiff contend that the tax is excessive in relation to the commerce carried on within the state. In sum, there is no showing that the inclusion of "flight time" will cause an undue burden on interstate commerce.

▮ Plaintiff argues that a tax on values represented by "flight time" has no relation to the opportunities, benefits, or protection afforded the owner by the state or county and, hence, violates due process. The contention is without merit. Although the United States through federal statutes regulating air commerce has exercised jurisdiction over the navigable air space, sovereignty in air space, including the power to tax, otherwise remains with the states. (*Braniff Airways, Inc.* v. *Nebraska State Board of Equalization, supra,* 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757].) The protection of state laws extends to air space. (See *Loma Portal Civic Club* v. *American Airlines, Inc.,* 61 Cal.2d 582, 593 [39 Cal.Rptr. 708, 394 P.2d 548].) In addition, states and local agencies must contend with numerous problems stemming from the use of air space for interstate air commerce, particularly as such use affects the use of subjacent lands. For example, they must deal with problems of noise, air crashes, and use regulations of lands under take-off and approach patterns. It is thus unrealistic to suggest that the owner of aircraft does not begin to enjoy the benefits,

opportunities, and protection afforded by the state until the moment the plane touches down and ceases to enjoy them the instant the plane is again airborne.

·The use of "flight time" as a factor in determining average physical presence of migratory flight equipment used in interstate commerce is not unusual. For example, the State of Missouri employs an apportionment formula based on the average of two factors: (1) The ratio which the certificated route miles within the state bears to the total certificated route miles of the airline; (2) the ratio which the miles flown in the state bears to the total miles flown. (Rev. Stats. Mo. § 155.040.)[5] In *United Airlines, Inc.* v. *State Tax Com.* (Mo.) 377 S.W.2d 444, and *Delta Airlines, Inc.* v. *Missouri State Tax Com.* (Mo.) 378 S.W.2d 515, assessments made under the statute were challenged by nondomiciliary airlines, but not on the ground that the statutory formula improperly included "flight time." In both cases, the principal issue was whether, under the statute, the total valuation to which the ratios were to be applied should be the value of the taxpayer's airline system as a whole—its unitary value—or only the total value of aircraft actually used within the state. The court held that the Missouri statute permitted the use of· only the value of· the ·aircraft operated within the state rather than the aggregate value of all aircraft owned and used by the taxpayer in its business. In *Delta Airlines* v. *Missouri State Tax Com., supra;* an additional issue was considered. The airline contended that the use of the certificated route-mile ratio was arbitrary and unreasonable and that, as expressed by the court;·"· . . . the only fair test of the reasonableness of an assessment is the ratio of time spent in Missouri to time spent elsewhere by the Missouri planes." The court held that since the statute provided for the average of two ratios, scheduled route miles and miles actually flown, the formula was neither arbitrary nor unreasonable. In the instant case, there has been no attempt either to include in the total valuation any aircraft not used within the state or to use route miles as a factor.

■ We conclude that the inclusion of "flight time" in the allocation formula used by defendant was proper. To exclude "flight time" would compound the inequities referred to by Justice Traynor in his dissent in *Flying Tiger Lines, Inc.* v. *County of Los Angeles, supra,* 51 Cal.2d 314. It would

[5]Compare: Nevada Rev. Stats., § 361.320.

permit values represented by "flight time" to escape taxation. (*Central R.R. Co.* v. *Pennsylvania, supra,* 370 U.S. 607 [8 L.Ed.2d 720, 82 S.Ct. 1297].)

The remaining question is the propriety of including time in the air over counties other than San Bernardino. With respect to direct flights to and from out-of-state bases and Norton Air Force Base, the assessor included all "flight time" within the State of California which, although the record is silent in this respect, might have included some air time over counties other than the defendant. Since values represented by such "flight time" have no other taxable situs in the state, they were properly treated as having situs in the defendant. For the purpose of intrastate assessment, the county in which regular stopovers are made is the only one with which such values have substantial contacts. With respect to flights to and from San Bernardino and bases in other counties in the state, the assessor took one-half of the "flight time." Although the record does not disclose whether the same method of apportionment was used, it was stipulated that the other counties imposed a "similar" tax. Plaintiff does not contend that the taxes imposed on its aircraft by the various counties in the state are cumulative or that the total value assessed by the counties exceeds the value properly apportionable to the state as a whole based on average physical presence in the state.

We conclude that the apportionment method here employed was proper and the assessment levied by defendant was valid.

This case does point up the desirability of centralizing the assessment of aircraft as in the case of railroads, utilities and certain other classes of property.[6] (Cal. Const., art. XIII, § 14.) That, however, is a matter of legislative policy.

Judgment affirmed.

McCabe, P. J., and Kerrigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 18, 1967.

---

[6]In 1961 the Legislature enacted section 5301 et seq., of the Revenue and Taxation Code providing for a uniform method of levying, assessing and collecting taxes on aircraft based in California, but the statute expressly excludes aircraft operated exclusively by an air carrier or foreign air carrier as defined in the "Federal Aviation Act of 1958," engaged in air transportation as defined in the act under a certificate or permit issued by the Civil Aeronautics Board of the United States authorizing the carrier to engage in such air transportation. (Rev. & Tax. Code, § 5303.)