[Civ. No. 52228. First Dist., Div. One. Jan. 27, 1983.]

MARIN HOSPITAL DISTRICT, Plaintiff and Appellant, v.
WILLIAM ROTHMAN, as Secretary, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Albert Bianchi, Susan Landon Marks, Susan Stanfield-Elias, Bianchi, Hoskins & Rosenberg and Bianchi, Hoskins, Stone, Paxton & Engel for Plaintiff and Appellant.

Sheeks, Oswald & Bassing and Joseph E. Sheeks as Amici Curiae on behalf of Plaintiff and Appellant.

Stephen A. Fraser, Douglas J. Maloney, County Counsel, and Allen A. Haim, Deputy County Counsel, for Defendants and Respondents.

OPINION

**ELKINGTON, J.**—This appeal by Marin Hospital District, a special district (hereafter the District), concerns Government Code section 26912, a statute responsive to the demands of the state Constitution's recently adopted (June 6, 1978) article XIII A, more commonly known as *Proposition 13*.

The District, a public entity and special district created by statute, had been authorized by law to levy a tax upon real property within its territorial limits. Relying upon other funding, *it had not levied such a tax for the fiscal year 1977-1978, nor had such a tax been levied for it.* Following Proposition 13's adoption the District's board of directors instructed its secretary, defendant William Rothman, to officially request inclusion of its anticipated revenue needs in the real property tax revenues to be raised by the County of Marin for the 1979-1980 fiscal year. Believing the request unlawful, because contrary to Government Code section 26912, defendant Rothman refused. The District, seeking to compel such allocation, commenced the instant Code of Civil Procedure section 1085 mandate proceedings against defendants Rothman, County of Marin, and Michael Mitchell, the county's auditor-controller. Judgment was entered against the District from which judgment it has appealed.

We affirm the judgment for the reasons which follow.

Few are unaware of the impact of Proposition 13's adoption upon the revenue needs of California's counties, cities, and special districts. Article XIII A, section 1, was thereby added to the state's Constitution, drastically reducing local public entities' previously relied upon revenue from real property taxes. As relevant here, it provided: "(a) The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts[1] within the counties. . . ."

Soon after the adoption of Proposition 13, the Legislature, giving effect to the constitutional command that the "One percent (1%) tax to be collected by the counties [be] *apportioned according to law*" (our italics), enacted (eff. June 24, 1978) the above-noted Government Code section 26912.

It provided, among other things, that the amount of revenue derived from real property taxes levied by a county, "shall be allocated by the county auditor . . . *to each local agency*" (our italics) of the county according to a there designated formula.

---

[1] "District," in this context, includes "a city, county, and special district." (Rev. & Tax. Code, §§ 95, subds. (a) & (b), 95.5.)

Section 26912 also contained the provision (subd. (a)), that: "For the purposes of this section, a *local agency* includes a . . . special district, . . . if such *local agency* levied a property tax during the 1977-78 fiscal year or if a property tax was levied for such *local agency* for such fiscal year, . . ."

It will be seen that no property tax having been levied by, or for, the District "during the 1977-78 fiscal year," it became ineligible thereafter, because of section 26912, for any apportionment of such taxes.

The District states the issues of its action, and thus of its appeal, as follows:

"1. That the definition of a local agency contained in Government Code section 26912(a) constitutes a denial of equal protection prohibited by Article I, section 7, of the California Constitution;

"2. That Government Code section 26912(a) constitutes retroactive legislation which impairs a vested right of appellant to receive real property tax revenues."

■ Despite this express limitation of the issues, we nevertheless perceive that the District has added another. It is extensively argued throughout its briefs that the Legislature had not intended to deny special districts situated as was the District, any allocation of property tax revenues, and that the statute was hastily enacted, ill considered, unreasonable, and unwise. We construe these several contentions as an argument that section 26912, as applied to the District, is also somehow invalid for reasons lacking constitutional dimension.

We give it our first consideration.

Adverting to the language of section 26912, we discern no lack of clarity. It states, without ambiguity, that a local agency such as the District, for which a property tax during the 1977-1978 fiscal year had *not* been levied, thereafter becomes ineligible for any allocation of taxes as might be collected by the county.

The meaning of a statute must, in the first instance, be sought in the language in which it is framed, and if that is plain the sole judicial function is to enforce it according to its terms (*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665]); where the language is clear there is no room for interpretation (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908] [cert. den. 320 U.S. 802 (88 L.Ed. 484, 64 S.Ct. 428)]). And courts will not determine the *wisdom,* desirability, or propriety of statutes enacted by the Legislature. (*Estate of Hor-*

*man* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785] [cert. den. 404 U.S. 1015 (30 L.Ed.2d 662, 92 S.Ct. 672)].)

"Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) We inquire further into "the whole system of law of which [Government Code section 26912] is a part."

The adoption of Proposition 13, which greatly curtailed revenue of the state's counties, cities and special districts was, understandably, treated by the Legislature as an emergency. Because such local agencies' revenue would necessarily be restricted, ameliorating legislation was patently indicated. The Legislature's concern will perhaps best be shown by the following declarations attending its legislation responsive to the emergency.

"The approval of Proposition 13 (Article XIII A of the California Constitution) by the voters of California at the June 6, 1978, Primary Election may, under certain circumstances, cause a shortage of funds to meet operating and certain debt expenses, and cause the curtailment or elimination of programs and services which are vital to the state's public health, safety, education, and welfare. In order that such services not be interrupted, it is necessary that this act take effect immediately." (Stats. 1978, ch. 292, § 40, p. 613.)

"The adoption of Article XIII A of the California Constitution has reduced the amount of property tax revenues available to local government and schools to meet operating and certain debt expenses, and may cause the curtailment or elimination of programs and services which are vital to the state's public health, safety, education, and welfare. In order that such services not be interrupted, it is necessary that this act take effect immediately." (Stats. 1979, ch. 282, § 106, p. 1059.)

Hard hit by Proposition 13 were many special districts, concerning which the Legislature also declared that: "The Legislature finds and declares that many special districts have the ability to raise revenue through user charges and fees and that their ability to raise revenue directly from the property tax for district operations has been eliminated by Article XIII A of the California Constitution. It is the intent of the Legislature that such districts rely on user fees and charges for raising revenue due to the lack of the availability of property tax revenues after the 1978-79 fiscal year. Such districts are encouraged to begin the transition to user fees and charges during the 1978-79 fiscal year." (Gov. Code, § 16270, eff. June 24, 1978; and see § 16279.1.)

Among the special districts traditionally able "to raise revenue through user charges and fees" were hospital districts such as the District. (See Health & Saf. Code, § 32125, exhorting such districts to "insofar as possible, establish such rates as will permit the hospital to be operated upon a self-supporting basis.")

And, as suggested by Government Code section 26912 here at issue, and section 16270, the Legislature concluded (we think reasonably) that special districts which were *not* in need of property tax revenues during the 1977-1978 fiscal year (i.e., the year preceding Prop. 13's adoption), and were therefore probably self-supporting, would be among the least affected by the necessary cutoff of such funds.[2]

From the foregoing, it becomes manifest that in reference to the whole system of law, of which it is a part, Government Code section 26912 is clear and unambiguous, and neither hastily enacted, nor ill considered. The instant arguments are invalid.

We advert now to the contentions of *constitutional* invalidity.

■ We first consider the argument that section 26912 denies the District its right to equal protection of the laws.

"In the area of economic regulation, the [state and federal high courts have] exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear *some rational relationship to a conceivable legitimate state purpose.*" (*Serrano v. Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241] [cert. den. 432 U.S. 907 (53 L.Ed.2d 1079, 97 S.Ct. 2951)]; italics added.)

The rule will, of course, apply to tax legislation, of which it is authoritatively said: "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. The Court fifty years ago concluded that 'the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation,' and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the

---

[2]It is noted that the Legislature contemporaneously appropriated $125 million for relief to needy local public entities, including special districts, for the fiscal year 1978-1979. (See Gov. Code, §§ 16270-16285, inclusive.)

members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." (*Madden* v. *Kentucky* (1940) 309 U.S. 83, 87-88 [84 L.Ed. 590, 592-593, 60 S.Ct. 406, 125 A.L.R. 1383].)

"The general principles applicable to the determination of an equal protection challenge to state tax legislation were recently summarized by the United States Supreme Court as follows: 'We have long held that "[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." . . . A state tax law is not arbitrary although it "discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy," not in conflict with the Federal Constitution. . . . This principle has weathered nearly a century of Supreme Court adjudication. . . .' [¶] Consistent with the foregoing expression of broad liberality, the high court has recognized the wide flexibility permitted states in the enforcement and interpretation of their tax laws, holding that 'The latitude of discretion is notably wide in the classification of property for purposes of taxation *and the granting of partial or total exemptions upon grounds of policy.*' . . . There exists no 'iron rule of equality, prohibiting the flexibility and variety that are appropriate' to schemes of taxation. . . . So long as a system of taxation is supported by a rational basis, and is not palpably arbitrary, it will be upheld despite the absence of " ' " "a precise, scientific uniformity" ' " " of taxation." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 233-234 [149 Cal.Rptr. 239, 583 P.2d 1281]; and see authority there collected.)

Under the above authority, Government Code section 26912, enacted to cope with a pressing emergency arising out of the state's local agencies' shortage of funds, manifestly bore "some rational relationship to a conceivable legitimate state purpose." No abridgement of "the equal protection of the laws" guarantee appears.

■ As previously noted, it is next contended by the District that section 26912 "impairs [its] vested right to receive real property tax revenues."

This contention also is without merit. It is settled law, at least vis-à-vis the Legislature, that local public agencies have no *vested right* to impose taxes or otherwise to exercise any particular governmental function. (See *Trenton* v. *New Jersey* (1923) 262 U.S. 182, 186-188 [67 L.Ed. 937, 940-941, 43 S.Ct.

534, 29 A.L.R. 1471]; *County of Mariposa* v. *Merced Irr. Dist.* (1948) 32 Cal.2d 467, 474 [196 Cal.Rptr. 920]; *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 284 [106 P.2d 11, 130 A.L.R. 1141].) *"It is clear that* [special district] *taxing agencies have no vested right to powers of taxation."* (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 73 [37 Cal.Rptr. 74, 389 P.2d 538] [cert. den. 379 U.S. 899 (13 L.Ed.2d 174, 85 S.Ct. 185)]; italics added.)

It has become unnecessary for us to respond to other points and arguments raised by the parties.

The judgment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 23, 1983.