[No. E007876. Fourth Dist., Div. Two. Mar. 20, 1991.††]

CITY OF RANCHO CUCAMONGA et al., Plaintiffs and
Appellants, v.
ERROL MACKZUM, as County Auditor/Controller, etc., et al.,
Defendants and Respondents;
MARK H. BLOODGOOD, as County Auditor/Controller, etc., et al.,
Defendants, Cross-complainants and Respondents;
THE STATE OF CALIFORNIA, Cross-defendant and Respondent.

††Review granted June 27, 1991. Review dismissed and opinion ordered published September 19, 1991.

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, John A. Sturgeon, Robert J. Hull, Fred R. Puglisi and Mark R. Dilbeck for Plaintiffs and Appellants.

Ronald A. Zumbrun, Anthony T. Caso, Richard M. Stephens, Rutan & Tucker, John L. Fellows III, City Attorney (Irvine), Patrick K. Rafferty, Lamb, Morris & Lobello and Curtis W. Morris as Amici Curiae on behalf of Plaintiffs and Appellants.

Alan K. Marks, County Counsel (San Bernardino), Paul F. Mordy, Deputy County Counsel, Best, Best & Krieger, Meredith A. Jury, Geoffrey K. Willis, Susan C. Nauss, James K. Hahn, City Attorney (Los Angeles), Richard A. Dawson, Assistant City Attorney, and Michael L. Klekner, Deputy City Attorney, for Defendants and Respondents.

De Witt W. Clinton, County Counsel, David L. Muir and Albert Ramseyer, Deputy County Counsel, for Defendant, Cross-complainants and Respondents.

John K. Van de Kamp, Attorney General, Edmond B. Mamer, Joseph M. O'Heron, Carol H. Rehm, Jr., and David S. Chaney, Deputy Attorneys General, for Cross-defendant and Respondent.

OPINION

**DABNEY, Acting P. J.**—Plaintiffs in this case are five cities: the Cities of Rancho Cucamonga, Temple City, Compton, El Segundo and Carson (the city plaintiffs) and five individuals: Dennis Stout, Ken Gillanders, Walter Tucker, Carl Jacobson and Katherine A. Calas, each of whom is a property owner and taxpayer of one of the city plaintiffs. Defendants are the Counties of San Bernardino and Los Angeles and their financial officers and the Cities of Redlands and Los Angeles. The State of California was named as a cross-defendant, and is aligned with the defendants for purposes of this appeal.[1] The matter was transferred to the Riverside County Superior Court pursuant to a motion brought by the City of Redlands under Code of Civil Procedure section 394, subdivision (1).

Plaintiffs complain that legislation (Gov. Code, § 26912, and former Rev. & Tax Code, § 2237; now Rev. & Tax Code, §§ 93, 95 et seq.) (Subject Legislation) which was enacted to implement Proposition 13, now article XIII A of the California Constitution,[2] is unconstitutional. Plaintiffs allege that the Subject Legislation unlawfully prevents the city plaintiffs, which either did not impose any property tax or imposed a very low property tax before Proposition 13, from levying a property tax and from sharing proportionately in property taxes now collected by the counties. In contrast, cities, such as the cities of Los Angeles and Redlands, which imposed high property taxes before Proposition 13, receive an unfairly large share of current property tax revenues. Plaintiffs contend that the Subject Legislation created an arbitrary method of distribution based solely on the imposition of a property tax in 1977-1978 without considering intervening changes such as population growth and the resulting need for capital improvements and public services. Finally, plaintiffs allege that the Subject Legislation violates the state constitutional requirements of tax situs, home rule, uniformity and equal protection.

Plaintiffs moved for summary judgment, seeking a declaration that the Subject Legislation was unconstitutional as alleged in the complaint. Plaintiffs' motion was largely based on a study, prepared by Rodney T. Smith, Ph.D., which concluded that the city plaintiffs do not receive a proportionate share of property tax revenues levied within the counties. The trial court found the Subject Legislation to be constitutional, citing *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281] (*Amador*).) ■ ■ ■ ■ On

---

[1] Amicus curiae briefs in support of plaintiffs' position have been filed by Pacific Legal Foundation, the City of Irvine and California Contracts Cities Association.

[2] All further constitutional references are to the California Constitution and all further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

appeal, plaintiffs challenge this ruling on the grounds that *Amador* is not dispositive of the issues raised in their complaint and that the Subject Legislation violates constitutional requirements relating to tax situs, uniformity, home rule and equal protection.[3]

DISCUSSION

I

*Subject Legislation*

In June 1978, California voters enacted Proposition 13, a constitutional amendment which contains four major elements: a real property tax rate limitation (art. XIII A, § 1),[4] a real property assessment limitation (art. XIII A, § 2), a restriction on state taxes (art. XIII A, § 3) and a restriction on local taxes (art. XIII A, § 4).[5] The adoption of Proposition 13 drastically curtailed revenue of counties, cities and special districts. The Legislature treated the matter as an emergency and immediately adopted ameliorating

---

[3] The procedural posture of this appeal is somewhat unusual. Plaintiffs moved for summary judgment, requesting a declaration as a matter of law that the Subject Legislation was unconstitutional. Defendants opposed the motion, but did not bring their own motion for summary judgment. At the hearing on the motion, the court asked plaintiffs' counsel, "You asked for summary judgment with your interpretation. Now asking for summary judgment, just in the abstract, . . . could I give summary judgment against your interpretation?" Plaintiffs' counsel conceded that the court could give summary judgment against plaintiffs' interpretation on plaintiffs' motion. After reviewing the moving and opposing papers and considering the arguments of counsel, the trial court determined as a matter of law that the Subject Legislation was constitutional. The court then entered judgment adverse to plaintiffs, citing *Stork* v. *State of California* (1976) 62 Cal.App.3d 465 [133 Cal.Rptr. 207] as authority for its action. *Stork* is not directly applicable. In that case, the trial court granted the defendant's summary judgment motion, but did not sign or enter a judgment as such. The plaintiff appealed from the order granting the motion. The appellate court noted that the order did not even declare rights adverse to the plaintiff, because the court could have simply exercised its discretion to withhold declaratory relief. Nonetheless the court reviewed the decision on the merits, because the facts were uncontested, the parties debated the constitutional question in their summary judgment papers, and the issue was one of law. (*Id.*, at pp. 467-468.)

The proper action would have been for the trial court simply to declare that plaintiffs were not entitled to a declaration in their favor. (*Siemon* v. *Russell* (1961) 194 Cal.App.2d 592, 595 [15 Cal.Rptr. 218].) However, the parties have not challenged the error, and the error is not jurisdictional. We are therefore free to consider the merits of the judgment.

[4] Article XIII A, section 1 provides, "(a) The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties."

[5] Article XIII A, section 4 provides, "Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

legislation to enable local agencies to carry on their functions. "The Legislature's concern will perhaps best be shown by the following declarations attending its legislation responsive to the emergency. [¶] 'The approval of Proposition 13 . . . may, under certain circumstances, cause a shortage of funds to meet operating and certain debt expenses, and cause the curtailment or elimination of programs and services which are vital to the state's public health, safety, education, and welfare. In order that such services not be interrupted, it is necessary that this act take effect immediately.' (Stats. 1978, ch. 292, § 40, p. 613 [enacting, among numerous other statutory provisions, Gov. Code, § 26912, and former Rev. & Tax. Code, § 2237].)" (*Marin Hospital Dist.* v. *Rothman* (1983) 139 Cal.App.3d 495, 499 [188 Cal.Rptr. 828] (*Marin*).)

The 1978 legislation provided relief for fiscal year 1978-1979 only. In 1979, the Legislature enacted permanent measures which establish the method by which counties distribute tax revenues.[6] The Legislature repeated its earlier statement of the emergency purpose of the legislation. (Stats. 1979, ch. 282, § 106, p. 1059.)

Under the Subject Legislation, counties may levy the 1 percent property tax allowed under article XIII A, section 1, subdivision (a) and distribute the revenues to local agencies, including cities, school districts, special districts and the counties themselves. However, only local agencies which had

---

[6]Revenue and Taxation Code section 93 provides, "(a) Notwithstanding any other provision of law, except as provided in subdivisions (b) and (c), no local agency, school district, county superintendent of schools, or community college district shall levy an ad valorem property tax, other than that amount which is equal to the amount needed to make annual payments for the interest and principal on general obligation bonds or other indebtedness approved by the voters prior to July 1, 1978 or the amount levied pursuant to Part 10 (commencing with Section 15000) of Division 1 and Sections 39308, 39311, 81338, and 81341 of the Education Code. In determining the tax rate required for the purposes specified in this subdivision, the amount of the levy shall be increased to compensate for any allocation and payment of tax revenues required pursuant to subdivision (b) of Section 33670 and subdivision (d) of Section 33675 of the Health and Safety Code.

"(b) A county shall levy an ad valorem property tax on taxable assessed value at a rate equal to four dollars ($4) per one hundred dollars ($100) of assessed value, and at an equivalent rate when the ratio prescribed in Section 401 is changed from 25 percent to 100 percent. The revenue from that tax shall be distributed, subject to the allocation and payment as provided in subdivision (d) of Section 33675 of the Health and Safety Code, to local agencies, school districts, county superintendents of schools, and community college districts in accordance with the provisions of the Government Code through the 1978-1979 fiscal year and in accordance with applicable provisions of the Revenue and Taxation Code in each fiscal year thereafter. . . .

"(c) Any jurisdiction may levy an ad valorem property tax in the excess of the rate permitted in subdivision (b) in order to produce revenues in an amount which is equal to the amount needed to make annual payments for the interest and principal on any bonded indebtedness for the acquisition or improvement of real property which is approved by a two-thirds vote of its voters after June 4, 1986."

levied a property tax or for which a property tax was levied during the 1977-1978 fiscal year receive a portion of the property tax revenues collected by the counties.[7] Thus, local agencies, such as city plaintiffs,[8] which had not levied a property tax for fiscal year 1977-1978 do not share in the property tax revenues collected within a county. In 1988, the Legislature enacted the current version of section 97.35, which provides that cities which had no property tax or low property tax before Proposition 13 will now receive seven percent of the counties' share of property tax revenues, phased in at 1 percent per year over seven years. In 1989, the Legislature enacted section 97.36 which, for certain cities in Los Angeles County, reduces the phase-in period to three years.

## II

### *Amador Decision*

Plaintiffs contend that the trial court erred in basing its ruling on *Amador, supra,* 22 Cal.3d 208. Plaintiffs first assert that the *Amador* court held that Proposition 13 did not revise the California Constitution; therefore, the principles of tax situs, uniformity and home rule were not repealed, revised or altered by Proposition 13.[9] Plaintiffs next contend that the *Amador* court did not address the validity of the subject legislation, but ruled only on the constitutionality of Proposition 13.

*A. Proposition 13's Effect on Other Constitutional Provisions.* ■ The *Amador* court determined that Proposition 13 did not accomplish an unconstitutional revision of the California Constitution, but merely amended

---

[7] Section 97 provides in part, "Except as otherwise provided in Sections 97.3, 97.32, 97.35, 97.37, and 97.38 for the 1980-81 fiscal year and each fiscal year thereafter, property tax revenues shall be apportioned to each jurisdiction pursuant to this section and Section 97.5 by the county auditor, subject to allocation and payment of funds as provided for in subdivision (b) of Section 33670 of the Health and Safety Code, to each jurisdiction in the following manner:

"(a) Except as provided in subdivision (b), for each tax rate area, each jurisdiction shall be allocated an amount of property tax revenue equal to the amount of property tax revenue allocated pursuant to this chapter to each jurisdiction in the prior fiscal year, modified by any adjustments required by Section 99 or 99.4

"(b) For each tax rate area, each special district shall be allocated an amount of property tax revenue equal to the amount of property tax revenue which would have been allocated pursuant to this chapter to such district in the prior fiscal year if no adjustment had been made pursuant to Section 98.6. This amount shall then be adjusted for the current year pursuant to Section 98.6

"(c) The difference between the total amount of property tax revenue and the amounts allocated pursuant to subdivision (a) shall be allocated pursuant to Section 98, and shall be known as the 'annual tax increment.' "

[8] Section 95 defines a local agency to include "a city, county, and special district."

[9] In another section of this opinion, we discuss more fully the *Amador* decision in respect to the home rule doctrine.

the Constitution. Plaintiffs argue that this holding means that Proposition 13 did not repeal, revise or alter preexisting provisions of the Constitution, and the trial court's reliance on *Amador* was misplaced. Plaintiffs cite *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813 [164 Cal.Rptr. 739] in which the court stated, "Proposition 13 did not repeal or in any way alter the provisions of article XIII, which presently contains 33 separate sections. Thus, article XIII, section 1, must be given effect." (*Id.*, at p. 822.)[10]

The *Amador* court undertook a very limited review of Proposition 13. The court announced, "[O]ur sole function is to evaluate article XIII A legally in the light of established constitutional standards. We further emphasize that we examine only those principal, fundamental challenges to the validity of article XIII A as a whole. In doing so we reaffirm and readopt an analytical technique previously used by us in adjudicating attacks upon similar enactments, in which 'Analysis of the problems which may arise respecting the interpretation or application of particular provisions of the act should be deferred for future cases in which those provisions are more directly challenged.' [Citation.]" (*Amador, supra,* 22 Cal.3d at p. 219.)

We conclude that the *Amador* court did not address the extent to which Proposition 13 affected other provisions of the Constitution, other than to conclude that such changes were not so sweeping as to amount to a revision of the Constitution. The *Amador* court left particular challenges open for resolution in future cases such as this one. *Amador* is not dispositive of the constitutional issues presented in this appeal.

*B. Validity of Subject Legislation.* ▮ Plaintiffs next contend that the trial court erred in relying on *Amador* because the *Amador* court did not address the validity of the Subject Legislation. The *Amador* court stated, "We caution that, save only as to the specific constitutional issues resolved, our summary description and interpretation of the article and of the implementing legislation and regulations do not preclude subsequent challenges to the specific meaning or validity of those enactments." (22 Cal.3d at p. 220.) In discussing the Subject Legislation, the *Amador* court stated, "[T]he Legislature has read the language of section 1, subdivision (a), ('The one percent (1%) tax to be collected by the counties and apportioned *according to law* to the districts within the counties') as conferring authority to legis-

---

[10] We disagree with this sweeping statement, although not with the holding of *State Bd. of Equalization, supra,* 105 Cal.App.3d 813. This broad language cannot be squared with the *Amador* decision in which the court acknowledged that Proposition 13 "change[d] the previous system of real property taxation and tax procedure by imposing important limitations upon the assessment and taxing powers of state and local government." (*Amador, supra,* 22 Cal.3d at p. 218.)

late on the subject and to apportion the tax funds to the local agencies and districts. The new legislation sets forth the applicable allocation formulae (Gov. Code, § 26912) and also gives guidance in the following matters, among many, which petitioners had found unclear from the face of article XIII A: (1) The new 1 percent maximum tax is to be levied by the counties on behalf of all local agencies and districts (Rev. & Tax. Code, § 2235); (2) the cities and counties are deemed 'districts' under section 1 of the new article and thus share in the tax proceeds (Gov. Code, § 26912; Rev. & Tax. Code, § 2217); (3) the 1 percent tax is a limit on the total, aggregate amount to be levied and apportioned by all local agencies and districts (Rev. & Tax. Code, § 2235, subd. (b)); . . ." (*Amador, supra,* 22 Cal.3d at pp. 246-247.) However, the *Amador* court relied on the Subject Legislation only to support its conclusion that Proposition 13 itself was not fatally ambiguous. The court did not hold that the Subject Legislation was constitutional, but explicitly left that issue open for future cases. (*Id.,* at p. 219.)

We conclude that the issues presented by this lawsuit were not determined by *Amador.* Nonetheless, even if the trial court erred in the basis for its ruling, we uphold that ruling if it is correct under any applicable theory of law. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) We thus examine the merits of each of plaintiffs' contentions.

### III

### *Constitutional Challenges*

*A. Tax Situs.* ■ Plaintiffs contend that the Subject Legislation violates the tax situs requirements of article XIII, section 14.[11] "The word 'situated', . . . as used in section 10, article XIII [see now article XIII, section 14] . . . is synonymous with 'situs'; it means having such contacts as confer jurisdiction to tax. [Citations.]" (*Zantop Air Transport, Inc.* v. *County of San Bernardino* (1966) 246 Cal.App.2d 433, 437 [54 Cal.Rptr. 813] (*Zantop*).)

The tax situs rule was articulated in *San Francisco etc. Ry. Co.* v. *Scott* (1904) 142 Cal. 222, 229 [75 P. 575]: "It is plainly the general policy of the law that property situated in one county or city should be taxable in that county or city for local purposes for its actual value, and that that local subdivision alone should have the benefit of this value for the purpose of raising its revenue. This indeed is the basis of all local taxation, . . . that

---

[11] "All property taxed by local government shall be assessed in the county, city and district in which it is situated." (Art. XIII, § 14.)

the property which receives that benefit of local government shall pay its proportion of the expenses thereof, apportioned according to actual value." The court in *Smith-Rice Heavy Lifts, Inc.* v. *County of Los Angeles* (1967) 256 Cal.App.2d 190, 200 [63 Cal.Rptr. 841] explained, "Generally speaking, the right to tax is founded upon the concept that 'it is in return for the benefit received by the person who pays it or by the property assessed.'"

Plaintiffs assert that the Subject Legislation violates the tax situs principle because real property taxes no longer go to the local agencies within whose jurisdiction the real property is located. They claim that instead, tax money crosses jurisdictional lines and goes to local agencies in other tax rate areas within the county.

Plaintiffs' argument is based on the premise that cities and other local agencies continue to impose property taxes after Proposition 13. Plaintiffs argue that Proposition 13 did not create a single real property tax. Article XIII A, section 1(a) states, "The one percent (1%) tax [is] to be collected by the counties and apportioned according to law to the districts within the counties." Plaintiffs state that this is no different from previous law. For instance, in *Los Angeles* v. *Superior Court* (1941) 17 Cal.2d 707, 715-716 [112 P.2d 10], the court stated that cities had the power to levy real property taxes and the counties collected those taxes as agents of the cities.

However, the only entity which now imposes a property tax is the county (except that local agencies may levy an ad valorem property tax to meet annual payments for preexisting general obligation bonds and other indebtedness). (Art. XIII A, §§ 1, 4; § 93, subd. (a).) As the Supreme Court recognized in *Carman* v. *Alvord* (1982) 31 Cal.3d 318, 331 [182 Cal.Rptr. 506, 644 P.2d 192], "Section 2237 provided for a single ad valorem tax of 1 percent or less, levied by each county and distributed among all local agencies. No other local agency was to levy a property tax, except for certain purposes including 'annual payments for the interest and principal on general obligation bonds or other indebtedness approved by the voters prior to July 1, 1978 [art. XIII A's effective date].' (Subd. (a).)" See also *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 981 [156 Cal.Rptr. 777], (interpreting article XIII A, section 4 as providing that ". . . cities, counties and special districts may not impose new ad valorem property taxes.") This view is shared by legal commentators: "Local governments are absolutely prohibited from imposing new *ad valorem* taxes on real property or transaction or sales taxes on the sale of real property." (Lefcoe & Allison, *The Legal Aspects of Proposition 13: The Amador Valley Case* (1979) 53 So.Cal.L.Rev. 173, 181, fns. omitted.)

Plaintiffs also argue that for us to conclude that the Legislature intended to create a single property tax, we must ignore section 100[12] which allows a city to reduce its share of the ad valorem tax collected by the county, resulting in a lowering of the tax rate levied on taxpayers in that local jurisdiction. However, section 100 accomplishes this by allowing a city to specify the dollar amount by which tax revenues to the city will be reduced. The county, not the city, then converts that amount into a tax rate reduction. If a city still levied an ad valorem property tax, a city could simply instruct the county directly that the city's tax rate had been reduced.

The county plainly has jurisdiction to tax real property situated within its borders. (*Zantop, supra*, 246 Cal.App.2d at p. 437.) The tax situs rule does not prevent a taxing entity, such as a county, from apportioning taxes as it sees fit within its jurisdictional boundaries. Thus, the Subject Legislation does not violate tax situs principles.

*B. Uniformity.* ■ Plaintiffs contend that apportionment under the Subject Legislation violates the uniformity provisions of article XIII, section 1.[13] "The provision of section 1, article XIII . . . that 'All property in the State . . . shall be taxed in proportion to its value,' is mandatory. [Citation.] . . . '[T]he taxpayer is entitled to . . . the exercise of good faith and fair consideration on the part of the taxing power in assessing his property, at the same rate and on the same basis of valuation as that applied to other property of like character and similarly situated. Inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax.' [Citations.]" (*McClelland* v. *Board of Supervisors* (1947) 30 Cal.2d 124, 128-129 [180 P.2d 676]; see also *Gottstein* v. *Gray* (1944) 66 Cal.App.2d 587, 593-594 [152 P.2d 742].)

---

[12] "(a) [O]n or before August 1 [of each year after 1982], any jurisdiction may request that the amount computed for it pursuant to this chapter be reduced for the current fiscal year by a specified amount. Upon such request, the county auditor shall compute an effective tax rate reduction by dividing the amount of property tax revenue to be reduced by the taxable assessed value on the secured tax roll of the jurisdiction and multiplying the quotient by 100. The effective tax rate reduction shall be applied to the taxable assessed value on each secured roll tax bill for property within the jurisdiction, and the resulting amount shall be subtracted from the property tax owed by the taxpayer which is attributable to the tax rate provided by subdivision (b) of Section 2237. This subtracted amount shall be shown on each such tax bill with a notation reading: 'Tax reduction by (name of jurisdiction).' . . .

" . . . . . . . . . . . . . . . . . . . . . . .

"(c) Effective tax rate reductions made pursuant to this section shall not be taken into account in computing property tax allocations pursuant to Sections 95 to 99, inclusive, of this chapter, . . . ." (§ 100, fn. omitted.)

[13] "Unless otherwise provided by this Constitution or the laws of the United States: [¶] (a) All property is taxable and shall be assessed at the same percentage of fair market value. . . . [¶] (b) All property so assessed shall be taxed in proportion to its full value." (Art. XIII, § 1.).

Plaintiffs concede that all property located within the counties may be taxed at a rate not to exceed one percent (art. XIII A, § 1), but they argue that the Subject Legislation results in the counties' retaining tax for county revenue purposes at a rate which is not uniform from one city to another. Plaintiffs' uniformity argument must fail for the same reason that the tax situs argument fails. As the sole taxing entity, the counties impose a uniform tax rate on all real property. (§ 93, subd. (a).) The distribution of the tax revenues under the Subject Legislation does not violate the principle of uniformity in tax collection.

## C. Home Rule

*i. Article XIII, Section 24.* ■ Plaintiffs contend that if Subject Legislation did result in a single tax, the Subject Legislation is unconstitutional under article XIII, section 24, which provides, "The Legislature may not impose taxes for local purposes . . . ." However, section 93, subdivision (b), which states, "A county shall levy an ad valorem tax on taxable assessed value . . .", does not itself impose the tax, but properly delegates that function to the counties. The maximum rate of tax is established in article XIII A, section 1, not in the statute. Article XIII, section 24 states, "The Legislature . . . may authorize local governments to impose [taxes for local purposes]." The Subject Legislation does not violate article XIII, section 24.

*ii. Article XI, Section 5.* Two of the city plaintiffs, the cities of Compton and Temple City, are charter cities. They complain that the Subject Legislation violates the home rule provisions of article XI, section 5.[14] The remaining city plaintiffs, although not charter cities, argue that the Legislature did not intend to set up a nonuniform system, and that their taxing powers,[15] as well as those of the charter cities, must be upheld. (See *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 319 [152 Cal.Rptr. 903, 591 P.2d 1] (*Sonoma*).)

*a. "Statewide Concern" Doctrine.* ■ "It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law. [Citations.] However, as to matters

---

[14] "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith." (Art. XI, § 5.)

[15] The Legislature has absolute power over the taxing power of general law cities, which have no vested right to powers of taxation. (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 73 [37 Cal.Rptr. 74, 389 P.2d 538].)

of statewide concern, charter cities remain subject to state law. [Citations.]" (*Sonoma, supra*, 23 Cal.3d at pp. 315-316; see also art. XI, § 5.) Article XI of the California Constitution, which grants home rule powers to charter cities, does not define the term "municipal affairs." ■ Courts determine whether a particular subject is of municipal or statewide concern based on the facts of each case. (*Sonoma, supra*, 23 Cal.3d at p. 316.) "[W]hile a court will accord great weight to the purpose of the Legislature in enacting general laws which disclose an attempt to preempt the field to the exclusion of local regulation, the fact that the Legislature has chosen to deal with a problem on a statewide basis is not determinative of whether the statute relates to a statewide concern." (*Ibid.*; see also *The Pines* v. *City of Santa Monica* (1981) 29 Cal.3d 656, 660 [175 Cal.Rptr. 336, 630 P.2d 521].)

■ Plaintiffs argue that the "statewide concern" cases have never been applied to the taxing authority of a charter city; the issue is presently pending before the California Supreme Court. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* ■ (Cal.App.).) Plaintiffs assert that on the specific issue of taxation for revenue, "[T]he power of municipal corporations operating under a freeholder's charter to impose taxes for revenue purposes is strictly a municipal activity authorized by the state Constitution and subject only to those limitations appearing in the Constitution or the charter itself." (*A.B.C. Distributing Co.* v. *City and County of San Francisco* (1975) 15 Cal.3d 566, 571 [125 Cal.Rptr. 465, 542 P.2d 625]; see also *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 469 [211 P.2d 564].)

More recently, in *Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386 [146 Cal.Rptr. 558, 579 P.2d 449], the court declared, "[T]he power to tax for local purposes clearly is one of the privileges accorded chartered cities by the home rule provision of the California Constitution (Cal. Const., art. XI, § 5, subd. (a); [citations].) [¶] Thus, Oakland's right to enact a revenue-raising tax is not at issue unless the city's own charter imposes restrictions upon its taxing power . . . , *or the city ordinance is in direct and immediate conflict with a state statute or statutory scheme.* [Citations.]" (*Id.*, at p. 392, italics added.)

Even before Proposition 13, courts recognized that a specific constitutional amendment allowing tax allocations controls even though it "may infringe upon a pre-existing taxing power of a chartered city." (*In re Redevelopment Plan for Bunker Hill, supra*, 61 Cal.2d at p. 74.) The *Bunker Hill* court explained, "Being special in nature and adopted later, the constitutional provision allowing a tax allocation of the municipal taxes of a chartered city and to that extent removing the collection of taxes from the realm of a municipal affair to that of a matter of general statewide concern must

be held to control in the limited field that it covers. [Citation.]" (*Ibid.*) We conclude that the statewide concern doctrine does apply to local revenue tax measures in appropriate circumstances.

   *b. Application of "Statewide Concern" Doctrine to Subject Legislation.* Section 93 begins, "Notwithstanding any other provision of law. . ." Section 95, subdivision (k) defines "city" to include both general law and charter cities. This language indicates that the Legislature intended to preempt the field of ad valorem property taxation.

More importantly, however, the purpose of Proposition 13 itself was to achieve statewide control over escalating local property tax rates. "Being special in nature and adopted later" (*Bunker Hill, supra,* 61 Cal.2d at p. 74), article XIII A prevails over the preexisting taxing power of charter cities. Article XIII A specifies that property taxes shall be "apportioned according to law." This clearly evidences a grant of authority to the Legislature to enact implementing legislation. We conclude that the subject legislation deals with a matter of statewide concern and, as such, prevails over city charters.

   *c. Amador.* Plaintiffs argue that *Amador* determined that Proposition 13 did not abrogate the home rule principles of article XIII. (*Amador, supra,* 22 Cal.3d at pp. 224-225.) The *Amador* court stated, "[R]ecent implementing legislation (Stats. 1978, chs. 292, 332) confirms the Legislature's present intention to preserve home rule and local autonomy respecting the allocation and expenditure of real property tax revenues. Although this legislation is, of course, subject to future change and, accordingly, is not conclusive on the point, the present pattern of legislative implementation of article XIII A appears to refute petitioners' premise that the article *necessarily and inevitably* has resulted or will result in the loss of home rule. Among other provisions, the Legislature has enacted Government Code section 26912 which contains the formulae whereby county auditors must allocate to various local agencies and school districts within county boundaries the revenues to be derived from the 1 percent maximum real property tax during the fiscal year 1978-1979. Although these formulae are somewhat complex, in general they aim at allocating these funds on a *pro rata basis*, without imposing any condition whatever regarding their ultimate use. Each 'local agency' (city, county, city and county, and special district) is to receive a proportionate share based upon its average property tax revenues during the previous three fiscal years. (Gov. Code, § 26912, subds. (a), (b)(1).) . . .

"The foregoing tax allocation scheme is evidently intended to assure that each local agency and school district will receive approximately the same

percentage of the total tax revenues as it had previously received. Thus, contrary to petitioners' fears and assumptions, the adoption of XIII A need not *necessarily* result either in abrogation of home rule in this state or in the delegation to the Legislature of the power to make those revenue and budgetary decisions formerly left to local discretion and control . . . ." (*Amador, supra,* 22 Cal.3d at pp. 226-227.)

Thus, the *Amador* court emphasized that the Subject Legislation carefully preserved two important aspects of home rule. First, the Subject Legislation acknowledged the extent to which particular cities had relied on ad valorem property tax revenues in the past to finance local programs. The *Amador* court noted with approval that the Subject Legislation preserved this balance, proving that local agencies would continue to receive the same proportion of property tax revenues. (*Amador, supra,* 22 Cal.3d at p. 227.) Second, the Subject Legislation left "revenue and budgetary decisions . . . to local discretion and control. . . ." (*Ibid.*)

However, the *Amador* court also noted that Proposition 13 "change[d] the previous system of real property taxation and tax procedure by imposing important limitations upon the assessment and taxing powers of state and local governments." (*Amador, supra,* 22 Cal.3d at 218.) The court added, "[A] constitutional limitation upon prevailing local taxation rates and assessments will have a potentially limiting effect upon the management and resolution of local affairs." (*Id.,* at p. 225.)

The *Amador* court indicated that Proposition 13 and the Subject Legislation limited the assessment and taxing powers of local governments, but did not affect local governments' ability to allocate their remaining resources as they saw fit. ■ We interpret *Amador* as holding that Proposition 13 may have modified, but did not abrogate or repeal, home rule provisions of the California Constitution. The Subject Legislation is consistent with the purpose of Proposition 13 and is therefore constitutional, even if it conflicts with article XI, section 5 as it existed before Proposition 13 was enacted.

*D. Equal Protection.* ■ Plaintiffs argue that the Subject Legislation violates their federal and state constitutional rights of equal protection. ■ The United States Supreme Court recently reiterated the standard for determining whether tax laws violate equal protection: "The States . . . have broad powers to impose and collect taxes. A State may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable. [Citations.] . . . In each case, '[i]f the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the law.' [Citation.]" (*Allegheny*

*Pittsburgh Coal* v. *Webster County* (1989) 488 U.S. 336, 344 [102 L.Ed.2d 688, 697-698, 109 S.Ct. 633]].)

State courts apply the same standard in determining whether legislation violates equal protection guaranties. In *Nordlinger* v. *Lynch* (1990) 225 Cal.App.3d 1259 [275 Cal.Rptr. 684], the court, in ruling on an equal protection challenge to the assessment limitations of article XIII A, instructed, "*Amador* recognized the equal protection challenge required it to scrutinize article XIII A under the deferential rational basis standard. (*Amador*, 22 Cal.3d at p. 233.) Under that standard, so long as a system of taxation 'is supported by a rational basis, and is not palpably arbitrary,' it will be upheld. [Citations.] Further, a state tax law is not arbitrary although it discriminates in favor of a certain class if the discrimination is founded upon ' " ' a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution." ' [Citations.]" (*Nordlinger, supra*, 225 Cal.App.3d at p. 1272; see also *Marin, supra*, 139 Cal.App.3d at p. 501.)

To support their equal protection argument, plaintiffs rely on *Levy* v. *Parker* (E.D.La. 1972) 346 F.Supp. 897, affirmed without opinion 411 U.S. 978 [36 L.Ed.2d 955, 93 S.Ct. 2266]. In *Levy*, the court ruled that Louisiana's method of distributing state tax relief funds to parishes (political entities comparable to California's counties) on the basis of the unequal tax rates of the parishes, violated equal protection. The court noted, "No reason has been advanced, nor any governmental policy argued, that would support the reimbursement of each Louisiana parish on the basis now in effect." (*Id.*, at p. 903.) Thus, the court determined that the method of distributing funds was "wholly arbitrary." (*Id.*, at p. 904.)

■■■ *Levy* is distinguishable on the facts; here, the challenged legislation is supported by the sound and rational policies of channelling scarce local property tax revenues to those agencies which had relied on such revenues most before Proposition 13. The court in *Marin, supra*, 139 Cal.App.3d 495, disposed of a very similar equal protection challenge on this basis. In that case, a hospital district, which had not levied a property tax in fiscal year 1977-1978, raised an equal protection challenge to the Subject Legislation. Specifically, the hospital district challenged Government Code section 26912, which provided for allocation of county property tax revenues to local agencies and defined such agencies to include only those which had levied property tax, or for whom such taxes were levied in fiscal year 1977-1978. The court noted, "[A]s suggested by Government Code section 26912 here at issue, and section 16270 [which encouraged special districts to raise revenue through user charges and fees to replace property tax revenues eliminated by Proposition 13], the Legislature concluded (we think reasonably) that special districts which were *not* in need of

property tax revenues during the 1977-1978 fiscal year . . . , and were therefore probably self-supporting, would be among the least affected by the necessary cutoff of such funds." (*Id.*, at p. 500, fn. omitted.) The court concluded, ". . . Government Code section 26912, enacted to cope with a pressing emergency arising out of the state's local agencies' shortage of funds, manifestly bore 'some rational relationship to a conceivable legitimate state purpose.' No abridgment of 'the equal protection of the law' guarantee appears." (*Id.*, at p. 501.) The policies set forth in *Marin* apply equally to the facts of this case. The Subject Legislation does not result in a denial of equal protection of the laws.

## DISPOSITION

The judgment is affirmed. The respondents are to recover their costs on appeal.

Hollenhorst, J., and Timlin, J., concurred.