BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE RONALD REITZ, COUNTY COUNSEL, COUNTY OF SAN BERNARDINO, has requested an opinion on the following question:
In the absence of a jurisdictional change, may a city council and a county board of supervisors execute an agreement that changes the allocation of property tax revenues as between the city and the county, where the change would not affect the allocation for any other public entity?
 CONCLUSION
In the absence of a jurisdictional change, a city council and a county board of supervisors may execute an agreement that changes the allocation of property tax revenues as between the city and the county, where the change would not affect the allocation for any other public entity.
 ANALYSIS
At the 1978 Primary Election, California voters approved Proposition13, which added Article XIII A to the Constitution. Subdivision (a) of section 1 of Article XIII A provides:
 "The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. The one percent (1%) tax [is] to be collected by the counties and apportioned according to law to the districts within the counties."
The Legislature has implemented this constitutional language by apportioning property tax revenues to cities, counties, and special districts. (See Ventura Group Ventures, Inc. v. VenturaPort Dist. (2001) 24 Cal.4th 1089, 1099; Amador Valley JointUnion High Sch. Dist. v. State Bd. of Equalization (1978)22 Cal.3d 208, 246; White v. State of California (2001)88 Cal.App.4th 298, 310; City of Rancho Cucamonga v. Mackzum
(1991) 228 Cal.App.3d 929, 936-940; 72 Ops.Cal.Atty.Gen. 138, 140 (1989).) Cities and counties are deemed "districts" for purposes of this constitutional provision. (Rev. Tax. Code, § 95, subd. (b); City of Rancho Cucamonga v. Mackzum, supra, at p. 940.)[1] The Legislature has devised technical and comprehensive formulas to govern the distribution of property tax revenues. (See §§ 93-100.9; American Canyon Fire ProtectionDist. v. County of Napa (1983) 141 Cal.App.3d 100, 105-106; 84 Ops.Cal.Atty.Gen. 81, 82 (2001); 71 Ops.Cal.Atty.Gen. 344, 346 (1988); 71 Ops.Cal.Atty.Gen. 286 (1988); 70 Ops.Cal.Atty.Gen. 87, 88 (1987).)
We are asked whether any of the various statutes enacted by the Legislature to implement Proposition 13 would permit a city and a county, in the absence of a jurisdictional change, to modify the allocation of property tax revenues as between them, provided that the modification would not affect the tax revenue allocation for any other public entity. We conclude that a city and county may agree to such a modification pursuant to the terms of section 99.02.
First, we note that the proposal would not involve a jurisdictional change such as: (1) the incorporation of a new city, (2) the annexation of land to a city, or (3) a functional consolidation between a city and a county. (See §§ 95, subd. (e), 99; 71 Ops.Cal.Atty.Gen. supra, at p. 346.) That being the case, we look to the authority granted by section 99.02 to reach our conclusion. Section 99.02 states:
 "(a) For the purposes of the computations required by [sections 951-00.9] for the 1985-86 fiscal year and fiscal years thereafter, in the case of any transfer of property tax revenues between local agencies that is adopted and approved in conformity with subdivisions (b) and (c), the auditor shall adjust the allocation of property tax revenue determined pursuant to Section 96.1 or its predecessor section, or the annual tax increment determined pursuant to Section 96.5 or its predecessor section, for those local agencies whose allocation would be altered by the transfer.
 "(b) Commencing with the 1985-86 fiscal year, any local agency may, by the adoption of a resolution of its governing body or governing board, determine to exchange any portion of its property tax revenues which is allocable to one or more tax rate areas within the local agency with one or more other local agencies having the same tax rate area or tax rate areas. Upon the local agency's adoption of the resolution, the local agency shall notify the board of supervisors of the county or the city council of the city within which the exchange of property tax revenues is proposed.
 "(c) If the board of supervisors or the city council concurs with the proposed exchange of property tax revenue, the board or council shall, by resolution, notify the county auditor of the approved exchange.
 "(d) Upon receipt of notification from the board of supervisors or the city council, the county auditor shall make the necessary adjustments specified in subdivision (a).
 "(e) Prior to the adoption or approval by any local agency of a transfer of property tax revenues pursuant to this section, each local agency that will be affected by the proposed transfer shall hold a public hearing to consider the effect of the proposed transfer on fees, charges, assessments, taxes, or other revenues. Notice of the hearing shall be published pursuant to Section 6061 of the Government Code in one or more newspapers of general circulation within each affected local agency.
 "(f) No local agency shall reallocate property tax revenue pursuant to this section unless each of the following conditions exists:
 "(1) The transferring agency determines that revenues are available for this purpose.
 "(2) The transfer will not result in any increase in the ratio between the amount of revenues of the transferring agency that are generated by regulatory licenses, use charges, user fees, or assessments and [the amount of revenues of the transferring agency] used to finance services provided by the transferring agency.
 "(3) The transfer will not impair the ability of the transferring agency to provide existing services.
 "(4) The transfer will not result in a reduction of property tax revenues to school entities."
Section 99.02 is applicable to "local agencies," including cities and counties (§ 95, subd. (a)) that have the same "tax rate area," defined as "a specific geographic area all of which is within the jurisdiction of the same combination of local agencies and school entities for the current fiscal year" (§ 95, subd. (g)). A city would be in the same tax rate area as the county in which it is situated.
Unlike section 99, which uses the term "jurisdictional change" extensively, section 99.02 does not make reference to city incorporations, annexations of land, or consolidations of functions between a city and county.[2] Rather, the statutory grant of authority contained in section 99.02 may be exercised for "any transfer of property tax revenues between local agencies that is adopted and approved in conformity with subdivisions (b) and (c)." (§ 99, subd. (a), italics added.)
In seeking a property tax revenue reallocation for reasons other than a jurisdictional change, a county and a city within that county would meet all of the threshold requirements of section 99.02. Assuming that the specified procedural requirements were met, the transfer of property tax revenues may be effectuated under the conditions of subdivision (f) of the statute.
Our conclusion finds support in the legislative history of the predecessor statute of section 99.02.[3] In 1994, the Legislature enacted section 99.02 (Stats. 1994, ch. 1167, § 3) to replace former section 99.4 (Stats. 1985, ch, 1204, § 4). A legislative committee report on the bill that became former section 99.4 reveals the intent behind the language now contained in section 99.02:
 "State Law requires local officials to allocate property tax revenues in . . . proportion to their distribution before Proposition 13. When boundaries change, when a new city or district is formed, or when agencies shift service responsibilities, the property tax rate does not go up. Instead, local agencies transfer a share of their property tax revenues to adjust for these `jurisdictional changes.'
 "In Ventura County some local agencies want to negotiate property tax revenue shifts even without a jurisdictional change. However, current law does not permit them to shift these local revenues, even if all the agencies agree.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "Assembly Bill 241 gives local agencies the power to exchange property tax revenues starting in 1985-86. The board of supervisors or city council with jurisdiction over the affected area must also agree to the exchange. AB 241 requires each affected local agency to hold a noticed public hearing before approving any property tax transfer. The bill requires that four conditions exist:
"The revenues are available.
 "The transfer will not increase the ratio of charges, fees, and assessments to other types of revenues.
 "The transfer will not impair the ability to provide services.
 "The transfer will not reduce schools' property tax revenues." (Sen. Com. on Local Government, Analysis of Assem. Bill No. 241 (1985-1986 Reg. Sess.) as amended July 9, 1985, pp. 1-2.)
The third reading analysis of Assembly Bill No. 241 prepared by the Office of the Assembly Floor Analyses additionally provided in relevant part:
 "Current law allows local government to transfer property tax revenue between taxing jurisdictions when there is a `jurisdictional' change (which is a change in boundary, creation of a new unit of government or a transfer of a service responsibility). There are no provisions which permit a local governmental jurisdiction to transfer property tax revenue to another jurisdiction where there has been no jurisdictional change.
 "This bill permits a local government to transfer property tax revenue to another local government whether there is a jurisdictional change or not, if the following conditions are met:
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "The purpose of this bill is to give local government more flexibility in their own fiscal affairs. There could be a number of reasons why an agency would want to give some of its property tax to another. Its revenue picture or service needs may change over time so the fixed amount of property tax is no longer needed. A shift may help maximize revenue sharing funds from the federal government." (Assem. Floor, 3d reading analysis of Assem. Bill No. 241 (1985-1986 Reg. Sess.) as amended July 9, 1985, pp. 1-2.)
Hence, it is evident from this legislative history that the current language of section 99.02 is intended to authorize local agencies to enter into agreements changing the property tax revenue allocation as between them in the absence of a jurisdictional change. Such a property tax shift would occur "according to law," as required by section 1, subdivision (a) of article XIII A of the Constitution.[4]
We conclude that in the absence of jurisdictional change, a city council and a county board of supervisors may execute an agreement that changes the allocation of property tax revenues as between the city and the county, where the change would not affect the allocation for any other public entity.
[1] All references hereafter to the Revenue and Taxation Code are by section number only.
[2] "`"Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed."'" (Penasquitos, Inc. v.Superior Court (1991) 53 Cal.3d 1180, 1188-1189.)
[3] "`Statements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts.'" (O'Brien v. Dudenhoeffer (1993) 16 Cal.App.4th 327, 334; seeDyna-Med, Inc. v. Fair Employment Housing Com. (1987)43 Cal.3d 1379, 1387.)
[4] We reject the suggestion that section 25.5 of article XIII of the Constitution precludes a city and a county from entering into a reallocation agreement. That constitutional provision restricts the Legislature from changing property tax revenue allocations without a two-thirds vote on and after November 4, 2004. It does not affect prior statutory enactments by the Legislature, and does not restrict local actions taken pursuant to those previous enactments.